UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

REGINALD SALTER,

                Petitioner,                Case No. 1:13-cv-13961
                                                  Hon. Thomas L. Ludington

v.

STEVEN RIVARD,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
AND DENYING CERTIFICATE OF APPEALABILITY AND PERMISSION TO
APPEAL IN FORMA PAUPERIS**

This is a habeas corpus petition filed by a state prisoner under 28 U.S.C. § 2254. Petitioner, Reginald Salter, is serving a life sentence and lesser terms for his Wayne Circuit Court jury trial convictions of first-degree murder, MICH. COMP. LAWS § 750.316, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750.224b. The petition raises four claims: (1) Petitioner's jury was not drawn from a fair cross-section of the community, (2) the prosecutor failed to disclose to defense counsel Petitioner's recorded jailhouse statement, (3) the police destroyed a videotaped interview of a key prosecution witness, and (4) Petitioner was denied the effective assistance of trial counsel. The Court will deny the petition because Petitioner's claims do not merit relief. The Court will also deny Petitioner a certificate of appealability and permission to proceed on appeal in forma pauperis.

**I.**

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the September 17, 2009, shooting death of Karlos West, who was fatally shot outside a house in Detroit where he sold drugs with defendant and Ken Russell. According to Russell, defendant and West were involved in a physical altercation three or four days before the shooting, during which West used his superior size and strength. Russell claimed that defendant was angry and bitter at West after this fight. West's girlfriend, Alicia Bishop, testified that she was present when West was shot. Bishop initially told the police that West spoke to someone he referred to as "Black" before he was shot, but she denied seeing the person who shot West. Later, after the police agreed to provide protection for Bishop and her family, Bishop identified defendant as the shooter.

*People v. Salter*, No. 300272, 2012 WL 832801, at *1 (Mich. Ct. App. Mar. 13, 2012).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. Mr. Salter was denied his Sixth Amendment right to a jury drawn from a fair and proper cross-section of the community and his Fourteenth Amendment rights of equal protection and due process, through the inadequate representation of minority venire members.

> II. The weight of the evidence so preponderates against the verdict that the verdict cannot stand, and a new trial should be ordered for Mr. Salter.

Petitioner also filed a pro se supplemental brief, raising the following additional claims:

> I. Mr. Salter was denied his Fourteenth Amendment right of equal protection and due process, due to the failure of the police investigators and the prosecutor to preserve the video recorded statement of the state's key witness. The failure to preserve the evidence led to its suppression and destruction, allowing any threats, promises or coercion related to the witness' change in story to remain hidden from the defense and the jury, which deprived the defendant of a fair trial.

> II. Mr. Salter was denied a fair trial guaranteed by the due process clause of the Fourteenth Amendment and denied his Fifth Amendment right not to take the

stand and answer incriminating questions, due to the prosecutor's misconduct of late disclosure of statements by the defendant contained in recorded phone calls.

III. Mr. Salter was denied his due process right to a fair trial guaranteed in the Fourteenth Amendment when the trial court erred in allowing the prosecutor to attempt to impeach the defendant's credibility with statements made by the defendant that were not disclosed by the prosecutor until after the defendant had already taken the stand. The defendant's Fifth Amendment rights were violated by the trial court's ruling not to suppress the evidence because of the prosecutor's violation of the discovery rule MCR 6.201(A)(6), (B)(3). The defendant was further prejudiced by the trial court's failure to verify the accuracy of the transcript the prosecutor read from against the actual recording.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Salter*, 2012 WL 832801, at *1, 5. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Salter*, 819 N.W.2d 573 (Mich. 2012) (table).

Petitioner then filed the instant habeas petition with this Court and a motion to hold the case in abeyance while he exhausted his state court remedies with respect to additional issues. Dkts. 1 and 3. The Court granted Petitioner's motion and ordered that the case be stayed. Dkt. 6.

Petitioner filed a motion for relief from judgment in the state trial court, raising the following claims:

I. Defense counsel was constitutionally ineffective for his failure to investigate police procedures, his failure to file a pretrial motion for police officer notes, and his failure to substantiate defendant's primary defense.

II. Defense counsel was constitutionally ineffective for his unreasonable choice of trial strategy which was to base defendant's defense around the admittance of evidence that he should have known was inadmissible.

III. Defense counsel was constitutionally ineffective when he failed to request a continuance or mistrial in response to the prosecutor's misconduct of disclosing

- 3 -

statements of the defendant after the defendant had already testified under direct examination.

IV. Appointed appellate counsel was constitutionally ineffective for his failure to raise the ineffectiveness of trial counsel on direct appeal.

The trial court denied the motion for relief from judgment. It found that review of Petitioner's claims was barred by Michigan Court Rule 6.508(D)(3) because Petitioner had not shown "good cause" for failing to raise the claims on direct appeal, or that "actual prejudice" would result by a failure to review his claims. Dkt. 14-14, at 2-6.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, but it was denied with citation to Rule 6.508(D). *People v. Salter*, No. 322284 (Mich. Ct. App. Aug. 22, 2014). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but it was also denied under Rule 6.508(D). *People v. Salter*, 863 N.W.2d 64 (Mich. 2015) (table).

Petitioner then filed his amended petition with this Court as well as a motion to lift the stay. Dkt. 10. The Court granted the motion, Respondent filed a responsive pleading, and Petitioner filed a reply. The case is now ready for decision.

## II.

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III.

### A.

Petitioner first claims that his jury was not drawn from a fair cross-section of the community because only two of the fourteen jurors serving on his jury were African-American. This claim was raised in the state courts in Petitioner's direct appeal, and the Michigan Court of Appeals found that Petitioner did not satisfy his burden of showing that any under-representation of African-Americans in his jury venire was attributable to systematic exclusion.

Petitioner now concedes that the claim is without merit. *See* Dkt. 16, at 1. He states, "[t]his claim was added to Petitioner's petition for the sole purpose of allowing this Court to examine how weak it was when appellate counsel raised it." *Id.* Accordingly, the Court deems the issue waived. See *Gates v. Chappell*, 2014 U.S. Dist. LEXIS 46394, *38 (N.D. Cal. Apr. 2, 2014).

The claim is nevertheless without merit. The Sixth Amendment, which guarantees trial by jury, forbids racial discrimination in the selection of jurors and requires the jury venire from which the trial jury is selected to represent a "fair cross-section of the community." *Duren v. Missouri*, 439 U.S. 357, 364–65 (1979). To establish a prima facie violation of the fair-cross-section requirement, a criminal defendant must show that (1) the group allegedly excluded is a "distinctive" group in the community; (2) the group was not fairly represented in the venire from which the petit jury was chosen; and (3) the under-representation resulted from a systematic exclusion of the group in the jury selection process. *Duren*, 439 U.S. at 364. A petit jury does not need to precisely "mirror" the racial composition of the community in which it sits in order to pass constitutional muster. *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975). "The Sixth Amendment guarantees only the opportunity for a representative jury, not a representative jury itself." *Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir. 2012). "The focus, therefore, is on the procedure for selecting juries, and not the outcome of that process." *Id*.

The Sixth Circuit held in *Ambrose* that a habeas petitioner must challenge the entire pool of prospective jurors from which his jury is drawn, not just the venire present in his courtroom. 684 F.3d at 645.  "[T]he composition of one panel does not indicate whether a fair cross-section claim exists." *Id*. Because Petitioner did not provide the state courts (or this Court) with any evidence that the pool of jurors from which his venire was drawn contained an under-

- 6 -

representative number of African-Americans, he completely failed to demonstrate a necessary predicate of his claim. Accordingly, the state court adjudication of his claim did not constitute an unreasonable application of established Supreme Court law.

**B.**

Petitioner's second claim asserts that his trial was rendered fundamentally unfair in violation of due process when the prosecutor failed to disclose to defense counsel that it possessed a recording of a jailhouse phone call made by Petitioner.

First, to the extent that Petitioner is claiming that the prosecutor violated state discovery rules, he is not be entitled to habeas relief. "It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *see also Friday v. Straub*, 175 F. Supp. 2d 933, 940 (E.D. Mich. 2001).

Petitioner's federal due process claim cannot be supported by clearly established Supreme Court law. A prosecutor's failure to disclose evidence constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There is no violation, however, if the defendant knew or should have known about the information in question, if the information was available to him from another source, or if the information is not exculpatory. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).

- 7 -

Here, Petitioner presumably knew of the statements he made during the calls himself and could have shared that information with defense counsel. *Cf. Hicks v. Collins*, 384 F.3d 204, 220–21 (6th Cir. 2004) (finding no violation of the due process right enunciated in *Brady* where inculpatory statements the petitioner made to police were not disclosed prior to trial). Moreover, the information was not exculpatory. The prosecutor asked Petitioner if he told his girlfriend during a call not to discuss details of the case over the phone. Dkt. 14-7, at 37–42. Nothing in the call was exculpatory in nature. Accordingly, Petitioner's second claim does not provide a basis for granting habeas relief.

## C.

Petitioner's third claim asserts that his trial was rendered fundamentally unfair in violation of due process when the videotaped statement of Alicia Bishop was destroyed by the police.

The Michigan Court of Appeals rejected the claim as follows:

> Defendant argues that his right to due process of law was violated because the police failed to preserve a video recording of Bishop's interview. The record discloses that defense counsel and the prosecutor both learned for the first time at trial that Bishop's police interview was recorded, but the recording was no longer available because pursuant to departmental procedure it was overwritten before any request to have the recording downloaded was made. Because defendant did not request any relief at trial based on the failure to preserve the video recording, this issue is unpreserved. Accordingly, our review is limited to plain error affecting defendant's substantial rights. *People v. Kowalski*, 489 Mich. 488, 505 (2011).

> The government's failure to preserve potentially exculpatory evidence violates a defendant's due process rights if the defendant can show bad faith on the part of the government. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988) [string citations omitted]; *People v. Antsey*, 476 Mich. 436, 460–461 (2006). Here, defendant has not shown that the police acted in bad faith when they failed to preserve the video recording of Bishop's interview. There is no indication that the police intentionally or deliberately destroyed the video recording of Bishop's interview. Instead, the record indicates that recordings of police interviews are automatically overwritten after 10 to 14 days if no request is received to

- 8 -

download a specific recording. Because no request for Bishop's interview was received within that time period, the video recording of her interview was automatically overwritten. A mere showing that evidence has been routinely destroyed pursuant to a policy does not generally establish that the police acted in bad faith. *People v. Petrella*, 126 Mich. App. 745, 753 (1983), aff'd 424 Mich. 221 (1985); see also *People v. Johnson*, 197 Mich. App. 362, 365 (1992) ("the routine destruction of taped . . . [material], where the purpose is not to destroy evidence for a forthcoming trial, does not mandate reversal."), and *People v. Albert*, 89 Mich. App. 350, 353 (1979) ("The pertinent inquiry . . . is whether the action of . . . [the police] in 'discarding' the tape-recorded confession was performed in bad faith or for the purpose of destroying evidence for a forthcoming trial."). There being no evidence of bad faith in this case, defendant is not entitled to relief.

*Salter*, 2012 WL 832801, at *3.

Though the state court discussed and denied the claim under the "plain error" standard, it is etitled to deference under § 2254(d). *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009); see also *Frazier v. Jenkins*, 770 F.3d 485, 506 (6th Cir. 2014) (Sutton, J., concurring in part and concurring in judgment) (opining that *Fleming* "makes clear as day that a state court's plain-error review of an issue may receive AEDPA deference when the state court addresses the merits of the federal claim").

The *Brady* rule discussed above extends to evidence that is not suppressed but is altered or destroyed. *See California v. Trombetta*, 467 U.S. 479, 489 (1984). For such evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 488–89.

However, the failure of police to preserve evidence that is only potentially useful for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). When the state fails to preserve evidentiary material which is only "potentially useful" to the defendant, the defendant

must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards*, 281 F. 3d 568, 580 (6th Cir. 2002) (citations omitted).

A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. See *Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003) (internal citations omitted). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id*. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56.

Petitioner's claim was reasonably adjudicated by the state courts because he failed to show that the police acted in bad faith when they destroyed the videotaped statement that only had potentially useful material. Petitioner's conclusory allegations regarding the alleged destruction of potentially exculpatory material fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. See *Malcum*, 276 F. Supp. 2d at 683. Petitioner asserts that the police erased the recording to cover up coercive interview tactics. But Bishop denied that any such tactics were employed. At trial, she maintained that she initially downplayed Petitioner's role in the shooting only because she witnessed the murder, and Petitioner was still on the street. Dkt. 14-4, at 26–28, 33–35, 50–55, 76–77, 85–88, 112.

Petitioner's claim also fails because his contention that the Bishop's videotaped statement might contain exculpatory or impeachment material is entirely speculative. See *United States v.*

- 10 -

*Jobson*, 102 F. 3d 214, 219 (6th Cir. 1996). "Where '[t]here is no indication that there was anything exculpatory' about destroyed evidence, due process has not been violated." *Id*., (quoting *United States v. Braggs*, 23 F.3d 1047, 1051 (6th Cir. 1994)). Accordingly, Petitioner is not entitled to relief with respect to this claim.

### D.

Petitioner's fourth claim asserts that his trial counsel was ineffective for a number of reasons. He contends that his attorney failed to present an alibi defense. He argues that his counsel failed to investigate Detroit Police Department policies to substantiate his claim that the videotape was deliberately destroyed. And he claims that his attorney should have moved for a mistrial when the prosecutor disclosed the existence of Petitioner's recorded jailhouse call. These claims were presented to the state courts during Petitioner's post-conviction review proceeding. Respondent contends that review is barred with respect to the claims because Petitioner failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by Michigan Court Rule 6.508(D)(3).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001). In addition, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds

previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." MICH. CT. R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders do not "clearly and expressly" state that the judgment rests on a procedural bar. See *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claim. *Id.*

In the present case, the Wayne Circuit Court judge, in rejecting Petitioner's motion for relief from judgment, ruled that Petitioner had failed to satisfy the good cause or actual prejudice

- 12 -

requirements of Rule 6.508(D)(3). See Dkt. 14-14, at 2-6. Because the trial court judge denied the petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's fourth claim is procedurally defaulted. See *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. See *House v. Bell*, 547 U.S. 518, 536 (2006). The miscarriage-of-justice exception may only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *Id*. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id*. (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner has shown no cause for his failure to comply with the Michigan state procedural rule. The only arguable basis for cause would be appellate counsel's failure to raise these claims on direct appeal. See *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (noting that "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to establish cause). In order to constitute cause for a procedural default, however, counsel's performance must amount to ineffective assistance of counsel under the Sixth Amendment, or must in itself amount to an independent constitutional claim. *Id*. Petitioner has failed to demonstrate that his appellate counsel was ineffective for omitting the

defaulted claim. To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).

Finally, Petitioner has not presented any new, reliable evidence to support an assertion that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. See *House*, 547 U.S. at 536. Because Petitioner has not presented any new reliable evidence that he is innocent of the crimes for which he was convicted, a miscarriage of justice will not occur if the Court declines to review the merits of Petitioner's procedurally defaulted claims. See *Wolfe v. Bock*, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Petitioner's fourth claim is therefore barred from review.

## E.

Finally, Petitioner has filed multiple motions seeking to expand the record in support of his claim that the police deliberately destroyed the videotaped interview. He seeks to show that police department policy dictated that the police retain the tape longer than they represented was the case at trial. See Dkts. 15, 17, and 20. The Court, however, has already determined that the state court adjudication of this claim did not involve an unreasonable application of Supreme Court law. In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C. section 2254(d)(1)—whether the state court determination was contrary to or an unreasonable application of established federal law—must be confined to the record that was

before the state court. 563 U.S. at 181-82. Accordingly, Petitioner is not entitled to expand the record with new materials.

## IV.

Federal Rule of Appellate Procedure 22 provides that an appeal of this decision may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that Petitioner's claims do not merit relief. Therefore, the Court grants a certificate of appealability. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal cannot be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.

Accordingly, for the foregoing reasons,

It is **ORDERED**, that the petition for a writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED** that Petitioner's motion to expand the record, ECF No. 20, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

- 15 -

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED.**

Dated: September 28, 2016                          s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on September 28, 2016.

                                    s/Kelly Winslow for
                                    MICHAEL A. SIAN, Case Manager